**GREGORY W. SMITH**, CSB 134385
**DIANA WANG WELLS**, CSB 284215
**LEILA K. AL FAIZ**, CSB 284309
LAW OFFICES OF GREGORY W. SMITH
9100 Wilshire Blvd., Ste. 345E
Beverly Hills, CA 90212
(310) 777-7894 / (310) 777-7895 facsimile
Email: sfrancia@gwslegal.com

**CHRISTOPHER BRIZZOLARA** CSB 130304
ATTORNEY AT LAW
1534 16th Street
Santa Monica, CA 90404
(310) 394-6447 / (310) 656-7701 facsimile
Email: Samorai@surfcity.net,
Samorai@adelphia.net

**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
Email: manncook@earthlink.net

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN GOLDBERG,<br><br>        Plaintiff,<br><br>vs.<br><br>NAHAL YASHAR, DANNY YASHAR, FARIBA LAVIAN, CITY OF BEVERLY HILLS, BEVERLY HILLS POLICE DEPARTMENT AS DOE 1, a governmental entity; and DOES 2 through 100,<br><br>        Defendants. | Case No.  2:17-cv-9226 AB (GJSx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF BEVERLY HILL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: 5/25/18<br>Time: 10:00 a.m.<br>Ctrm: 7B |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.  Plaintiff Has Properly Pled His Claims Against The City. . . . . . . . . . . . . . . . 6

    A.  Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    B.  The *Monell* Allegations Are Sufficient.  . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  The SAC Properly Alleges A Cal. Civ. Code § 52.1(b) Claim.  . . . . . . . . . . . 13

IV.  The SAC Properly Alleges False Imprisonment. . . . . . . . . . . . . . . . . . . . . . . 17

V.  The SAC Alleges Intentional Infliction of Emotional Distress. . . . . . . . . . . . 18

VI.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

00125385.WPD

1

Table of Authorities

Page(s)

2   ***Cases***

3

*Arpin v. Santa Clara Valley Transp. Agency,*
4        261 F.3d 912 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5   *Ashcroft v. Iqbal,*
         556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12
6

*Bell Atlantic Corp v. Twombly,*
7        550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

8   *City of St. Louis v. Praprotnik,*
         485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
9

*Clouthier v. County of Contra Costa,*
10       591 F.3d 1232 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11  *Conley v. Gibson,*
         355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
12

13  *Cornell v. City and County of San Francisco,*
         17 Cal.App.5th 766 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16
14

*Galbraith v. County of Santa Clara,*
15       307 F.3d 1119 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16  *Gillette v. Delmore,*
         979 F.2d 1342 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13
17

18  *Hopkins v. Bonvicino,*
         573 F.3d 752 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18
19

*Hughes v. Pair,*
20       46 Cal.4th 1035 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

21  *Kanae v. Hodson,*
         294 F.Supp.2d 1179 (D.Haw. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
22

*Larez v. City of Los Angeles,*
23       946 F.2d 630 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

24  *Leatherman v. Tarrant County,*
         507 U.S. 163 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
25

26  *Lyall v. City of Los Angeles,*
         807 F.3d 1178 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14
27

*Perez v. City of Huntington Park,*
28       7 Cal. App. 4th 817 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

00125385.WPD

*Reese v. County of Sacramento*,
        ___ F.3d ___ (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Robinson v. Solano County*,
        278 F.3d 1007 (9th Cir. 2002) (*en banc*) . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Sheehan v. City and County of San Francisco*,
        743 F.3d 1211 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sullivan v. County of Los Angeles*,
        12 Cal.3d 710 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Swierkiewicz v. Sorema N.A.*,
        534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Reese*,
        2 F.3d 870 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Watkins v. City of Oakland*,
        145 F.3d 1087 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Wood v. Moss*,
        ___ U.S. ___, 134 S.Ct. 2056 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Constitutions/Statutes/Rules of Court**

Cal. Civ. Code § 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13, 14, 17

Cal. Const., Art. I § 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Gov't Code § 815.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-19

Cal. Penal Code § 853.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17, 18

Federal Rules of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Federal Rules of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rules of Civil Procedure 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Title 42, United States Code § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10

U.S. Const., Amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 19

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

00125385.WPD

# I. Overview.

This case concerns a false accusation, arrest and imprisonment of Plaintiff Brian Goldberg, who at the time was the President of the Beverly Hills Unified School District, and in the months preceding his arrest, had called attention to and exposed the appearance of corruption and collusion involving the Beverly Hills Police Department ("BHPD") and its then police chief, David L. Snowden.

The operative complaint is Plaintiff's Second Amended Complaint ("SAC") filed March 30, 2018 (doc 15).

The SAC alleges that on March 9, 2015, BHPD officers took plaintiff into custody after private party defendants Nahal Yashar, Danny Yashar and Fariba Lavian falsely accused plaintiff of battery.[1] The officers did so even though they knew or should have known the private party defendants had a history of fabricating and asserting bogus claims of domestic-related conduct, and that there was video footage of plaintiff's encounter with the supposed victim, which corroborated plaintiff's account while seriously undermining defendants' version.

The SAC alleges that because Plaintiff had been outspoken about his claims of corruption within the BHPD, and by the then-police chief in particular, personnel with the City of Beverly Hills and the BHPD took advantage of the situation in an effort to smear Plaintiff. They formally booked Plaintiff and held him for ten hours, rather than promptly releasing him pursuant to Cal. Penal Code § 853.6 ("In any case in which a person is arrested for an offense declared to be a misdemeanor, including a violation of any city or county ordinance, and does not demand to be taken before a magistrate, that person shall, instead of being taken before a magistrate, be released according to the procedures set forth by this chapter. . . ."). Furthermore, BHPD officials purposefully

---

[1] These defendants have not sought dismissal nor have they filed a responsive pleading in this Court.

issued a press release announcing Plaintiff's arrest. As BHPD officials undoubtedly knew would happen, given Plaintiff's status in the community, his arrest and captivity generated substantial negative publicity.

No criminal charges were ever filed against Plaintiff. But the arrest and imprisonment did enough damage. Plaintiff suffered emotional and physical distress, plus substantial reputational harm causing plaintiff loss of employment opportunities and earnings.

The City's latest motion claims:

(1) Plaintiff fails to state a claim for False Arrest/Imprisonment under state law;

(2) Plaintiff fails to state a claim for Intentional Infliction of Emotional Distress;

(3) Plaintiff fails to state a claim under Cal. Civil Code §52.1(b); and

(4) Plaintiff's *Monell* claims against the City fail.

Notwithstanding the City's incorrect assertion that the SAC is "virtually identical" to the First Amended Complaint (Motion 6:7), in truth the SAC cures the defects found by the Court in its March 1, 2018 Order (doc. 14).[2]

## II. Plaintiff Has Properly Pled His Claims Against The City.

Initially, the Court should note the City does *not* argue the SAC fails to allege First and Fourth Amendment violations. Rather, the City argues the *Monell* allegations subjecting the City to liability for the violations, are insufficient. The City is wrong.

### A. Standard Of Review.

On a Rule 12(b)(6) motion a court may dismiss a complaint "only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the

---

[2] Though somewhat unclear, the City seems to argue that both the false arrest *and* false imprisonment claims made under state law should be dismissed. Less there be any doubt Plaintiff asserts his false arrest claim as against the City, pursuant to 42 U.S.C. § 1983.

00125385.WPD

allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

Though this is a Motion to Dismiss under Rule 12(b)(6), defendants mistakenly argue as if they had brought a F.R.Cv.P. 56 motion: For example, defendants state, "In order to *establish* municipal liability . . ." (Motion 14:12); "the plaintiff may *prove* . . ." (Motion 14:17), "a local government can be held liable on a § 1983 claim only . . ." (Motion 15:16), and so on. Defendant's reliance on *Clouthier v. County of Contra Costa,* 591 F.3d 1232, 1237(9th Cir. 2010), *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1216 (9th Cir. 2014), *Kanae v. Hodson*, 294 F.Supp.2d 1179, 1181 (D.Haw. 2003), *Larez v. City of Los Angeles*, 946 F.2d 630, 633 (9th Cir. 1991) and *Watkins v. City of Oakland*, 145 F.3d 1087, 1090 (9th Cir. 1998), further makes the point. *All* arose from summary judgment, except for *Larez* which followed a jury verdict; *none* involved a decision on a motion to dismiss.

Consequently, at this stage Plaintiff only need only sufficiently allege a plausible claim, which he has.

### B.  The *Monell* Allegations Are Sufficient.

The SAC Complaint alleges:

 . . .Plaintiff contends that any policy maker for BHPD is also a policy maker for defendant City.

SAC, ¶6.

Plaintiff is informed and believes and based thereon alleges that when BHPD officials arrested and booked Plaintiff at the BHPD jail, City officials knew who he was -- the President of the Beverly Hills Unified School District ("School District"). Plaintiff is informed and believes and based thereon alleges that as of March 9, 2015, it was *common knowledge amongst BHPD officials, including policy maker(s) for the BHPD*, that Plaintiff, in his capacity as the School District president, had been calling

attention to and exposing the appearance of corruption and collusion involving the BHPD and Evidenced Based, Inc. ("EBI"), a private security company. Among the acts Plaintiff had exposed were payoffs by EBI to the then-BHPD police chief, and the refusal of the BHPD to provide on-campus security services to the School District, a refusal that appeared calculated to force the School District to hire EBI for security services. Plaintiff is informed and believes and based thereon alleges that given Plaintiff's status and his well-known criticism of high ranking BHPD officials, *among the BHPD officials quickly notified about Plaintiff's arrest, were BHPD policy maker(s), including then BHPD Police Chief David L. Snowden.*

SAC ¶ 17 (emphasis added).

Plaintiff is informed and believes and based thereon alleges that notwithstanding BHPD officials' actual knowledge that Nahal Yashar had most likely fabricated her claim of a battery, *BHPD officials, with the knowledge and acquiescence of one or more BHPD's policy maker(s),* elected to book Plaintiff on the battery charge as if there was probable cause to do so when in actuality, the officials most likely believed there was an absence of probable cause. Furthermore, Plaintiff is informed and based thereon alleges that *BHPD officials, with the knowledge and acquiesce of one or more BHPD policy maker(s),* intentionally prolonged and delayed Plaintiff's booking at the BHPD jail. BHPD officials delayed the booking to insure that the BHPD could issue a "news release" publicly reciting the fact of Plaintiff's arrest and incarceration, along with the false claims of defendant Nahal Yashar that Plaintiff had repeatedly battered her without justification, claims BHPD officials believed were most likely

00125385.WPD

false. Plaintiff is informed and based thereon alleges BHPD officials wanted the "news release" to issue because the officials sought to undermine Plaintiff's credibility with his peers in connection with Plaintiff's exposure of apparent wrongdoing by BHPD officials, and/or in retaliation for Plaintiff's exposure of the apparent wrongdoing and pay-offs alleged above.

SAC ¶18 (emphasis added).

. . . As alleged above, at the time of their occurrence the wrongful acts were authorized and/or acquiesced in or ratified by a BHPD policymaker(s), such as defendant DOE 2. Therefore, Plaintiff is entitled to recover damages pursuant to 42 U.S.C. § 1983.

SAC, ¶44.

. . .The wrongful acts were approved or ratified by a City and/or BHPD policymaker, such as defendant DOE 2.

SAC, ¶46.

The allegations suffice. Via ratification, a municipality's policy maker can subject the municipal defendant to § 1983 liability. In *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) the Court held: "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." In *Watkins v. City of Oakland*, 145 F.3d 1087 (9th Cir. 1998), the Ninth Circuit affirmed denial of qualified immunity for the police chief (whose liability could then be imputed to the City) because he dismissed the victim's complaint of excessive force despite evidence thereof, and failed to make any changes in police procedure. 145 F.3d at 1093-94. Here, the allegations show that one or more BHPD "made a deliberate choice to endorse the [officers' conduct] and the basis for it," thereby ratifying the conduct for the purposes of *Monell* liability. *Gillette v. Delmore*,

979 F.2d 1342, 1348 (9ᵗʰ Cir. 1992).

Furthermore, at this stage Plaintiff is *not* required to allege the evidentiary detail of *exactly* who, what, when, where and how. In *Leatherman v. Tarrant County*, 507 U.S. 163 (1993), for *Monell* liability the Supreme Court stated the pleading standard:

> "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claims.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

507 U.S. at 168 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). *See also Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002), wherein the Ninth Circuit held it error to require a heightened pleading standard in § 1983 cases.

Despite the foregoing decisions, the City argues that the SAC does not meet the pleading requirement of Fed.R.Civ.Proc. 8 as interpreted in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Motion, 9:10-10:3. The City errs.

First, if either *Twombly* or *Iqbal* had meant to overrule *Leatherman,* one would think the Supreme Court would have said so. Yet *Iqbal* does not even mention *Leatherman*. Meanwhile, *Twombly* went out of its way to state it was *not* disturbing the result or analysis in *Leatherman*. After finding that the complaint "fails to state a claim," the *Twombly* Court quickly noted its conclusion was based on well-settled pleading standards, including those stated in *Leatherman*:

> In reaching this conclusion, we do not apply any "heightened" pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be accomplished " 'by the process of amending the Federal Rules, and not by judicial interpretation.' "

00125385.WPD

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (*quoting Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). On certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires. Fed. Rules Civ. Proc. 9(b)-(c). Here, our concern is not that the allegations in the complaint were insufficiently "particular(ized)", *ibid.*; rather, the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.

550 U.S. at 569 n.14.

Second, *Iqbal* concerned the need for factual allegations implicating, as personally responsible for constitutional violations, high ranking policy makers in the formulation and enforcement of policy. The *Iqbal* plaintiff alleged that then United States Attorney General John Ashcroft, and then FBI Director Robert Mueller, had *personally* approved of governmental policies that unconstitutionally discriminated against plaintiff. So the issue was whether plaintiff adequately "state[d] a claim of unconstitutional discrimination against [Ashcroft and Mueller] entitled to assert the defense of qualified immunity." 556 U.S. at 675. The Court found the allegations stated only legal conclusions devoid of any factual allegations that Ashcroft and/or Mueller had personally participated in imposing upon plaintiff and others likewise situated " 'restrictive conditions of confinement' " "due to their race, religion, or national origin." 556 U.S. at 683. Rather, plaintiff only "plausibly suggest[ed] that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity." *Id.*

*Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007), *Iqbal,* and their progeny require only that an allegation be plausible. "A claim has facial plausibility when the plaintiff pleads the factual context that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard "is not a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "And under the governing pleading standard, the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Wood v. Moss*, 572 U.S. ___, 134 S.Ct. 2056, 2067 (2014) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, the SAC alleges BHPD officials falsely arrested and imprisoned Plaintiff in violation of the First and Fourth Amendments, because though officials knew or should have known there was no probable cause for his arrest or continued confinement, instead they had Plaintiff booked and incarcerated on account of his public denouncements and criticisms of the BHPD and its then-Police Chief Snowden. The SAC further alleges that the policymakers (*i.e.,* Chief Snowden and others) knew about the false arrest and imprisonment at the time it occurred, directed and/or acquiesced in it and/or approved it, and that it was done specifically in retaliation for Plaintiff's exposure of the apparent wrongdoing and pay-offs he had alleged. These pleading allegations are far more sufficient than those found inadequate in *Iqbal* and *Twombly* as even this quotation from the City's motion shows:

"Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy." . . . "Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional

00125385.WPD

decision or action and the basis for it."

Motion, 15:1-6 (*citing Gilette v. Delmore,* 979 F.2d 1342, 1346 (9th Cir. 1992)).

Moreover, there is evidence (a 4/15/15 Media Release and a 3/13/15 newspaper article quoting Sgt. Max Subin), in which the City admits the actions of its officials *in this incident* were pursuant to City policy (evidence which Plaintiff would offer in opposition to a Motion for Summary Judgment, and which Plaintiff could specifically allege in an amended complaint, if the Court were to order it).

The case law relied on by the City, regarding civil rights plaintiffs attempting to use police internal investigations as evidence of ratification (Motion 16:11-17:19), does not apply because the SAC alleges the ratification occurred the very day of Plaintiff's arrest and incarceration. The SAC alleges the former chief's direct involvement with the arrest and prolonged incarceration of Plaintiff for the purpose of smearing his reputation in retaliation for his exercise of free speech rights. Given the specific factual assertions set forth in the SAC, Plaintiff has *not* made "conclusory" claims devoid of "any" "factual content" upon which one can infer liability on the part of the City.

## III.  The SAC Properly Alleges A Cal. Civ. Code § 52.1(b) Claim.

Under Cal. Civ. Code § 52.1(b), a violation of constitutional or statutory rights where the violation is accompanied by a completed or attempted act of threats, intimidation or coercion, entitles the injured party to damages. Cal. Civ. Code § 52.1(a) (setting forth the standard of liability), (b) (authorizing private citizen suits for damages).

The City asserts the SAC alleges no facts that anyone at Beverly Hills "threatened or engaged in coercive actions 'beyond the coercion inherent in a detention or search.' " Motion 13:11-12 (*quoting Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015)). (The Court also cited *Lyall* in its earlier Order Granting the Motion to Dismiss the FAC. See doc. 14 @ 10).

Continual reliance on *Lyall* is misplaced for two reasons. First, *Lyall* involved the unlawful search and seizure of individuals. The *Lyall* plaintiffs' § 52.1(b) claim arose solely from alleged violations of rights protected under the Fourth Amendment (and the state-law counterpart of the Cal. Const., Art. I § 13) prohibiting unreasonable search and seizure, *i.e.,* there were no acts claimed or alleged beyond the Fourth Amendment / Art. I §13 violations. Here, Plaintiff alleges a violation of his First Amendment rights accompanied or accomplished by the coercion power of arrest and imprisonment. Therefore, assuming the *Lyall* standard is the law ( but see next paragraph), the SAC satisfies that standard.

Second, Plaintiff submits the *Lyall* standard is inapplicable based on two more recent decisions, one that issued a few weeks ago from the Ninth Circuit, which expressly reject the City's claim that § 52.1(b) coercion must exist " 'beyond the coercion inherent in a detention or search.' " Motion 8:12-13. In *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766 (2017), the California court of appeal rejected *Lyall* and similar cases insofar as those decisions required coercion separate and apart in *all* instances of false arrest or imprisonment:

> We acknowledge that some courts have read *Shoyoye* [*v. County of Los Angeles*, 203 Cal.App.4th 947 (2012)] as having announced "independen(ce) from inherent coercion" as a requisite element of all Section 52.1 claims alleging search-and-seizure violations, but we think those courts misread the statute as well as the import of *Venegas* [*v. County of Los Angeles*, 32 Cal.4th 820 (2004)].[28]
>
> Fn.28: See, e.g., *Lyall v. City of Los Angeles* (9th Cir. 2015) 807 F.3d 1178, 1196 ("(n)umerous California decisions make clear that a plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the

Bane Act"), citing *Allen*, *supra*, 234 Cal.App.4th at p. 69, 183 Cal.Rptr.3d 654 (unlawful arrest); *Quezada v. City of Los Angeles* (2014) 222 Cal.App.4th 993, 1007-1008, 166 Cal.Rptr.3d 479 (unlawful search); *Shoyoye*, *supra*, 203 Cal.App.4th at p. 959, 137 Cal.Rptr.3d 839.) It strikes us as an overstatement to say there are "numerous California decisions" for this proposition or that our case law is "clear" on the point. *Allen*, a pleading case, and the sole published California appellate opinion to consider *Shoyoye* in any depth, ultimately holds only that "conclusory allegations of 'forcible' and 'coercive' interference with plaintiffs' constitutional rights are inadequate to state a cause of action for a violation of section 52.1." (*Allen*, at p. 69, 183 Cal.Rptr.3d 654.) *Quezada* refers briefly to *Shoyoye's* independent from inherent coercion test in a background summary of Section 52.1 law, but never applies it, relying instead on the fact that no coercion at all was present in the case. (*Quezada*, at p. 1008, 166 Cal.Rptr.3d 479). [End of footnote 28.]

\*    \*    \*    \*

In *Venegas*-which rejected a construction of Section 52.1 limiting its applicability to "threat(s), intimidation or coercion" against minorities and other statutorily protected groups-the Supreme Court declined to place "added restrictions on the scope of section 52.1" beyond its plain language, concluding that "would appear to be more a legislative concern than a judicial one." (*Venegas*, *supra*, 32 Cal.4th at p. 843, 11 Cal.Rptr.3d 692, 87 P.3d 1.) The same may be said here. Properly read, the statutory phrase "threat, intimidation or coercion" serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief. We see no

reason that, in addition, the required "threat, intimidation or coercion," whatever form it may take, must also be transactionally "independent" from a properly pleaded-and-proved-unlawful arrest.

17 Cal.App.5th 766, 799, 800 & n.28.

Then in *Reese v. County of Sacramento*, ___ F.3d ___ (9th Cir. 2018), 2018 WL 1902416 (filed 4/23/18), a decision issued after this Court's March 1, 2018 Order, the Ninth Circuit found *Cornell* controlling:

> Thus, based on the weight of this new state authority [*Cornell*], and our obligation to consider the California Court of Appeal's thorough analysis of its own law, we draw two conclusions as to the necessary showing for an excessive force claim under the Bane Act. First, the Bane Act does not require the "threat, intimidation or coercion" element of the claim to be transactionally independent from the constitutional violation alleged. *Cornell*, 225 Cal.Rptr.3d at 382-83. Second, the Bane Act requires a "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id.* at 384.

2018 WL 1902416 *8.

Further, the SAC alleges BHPD officials knowingly incarcerated Plaintiff without probable cause in order to punish Plaintiff and ruin his reputation, in retaliation for Plaintiff having exercised his First Amendment rights in criticizing the BHPD and its chief over their corrupt relationship with the private security firm Evidenced Based, Inc. SAC ¶¶17-19. These allegations satisfy the "specific intent" element for a § 52.1(b) violation. *Reese*, slip opinion 26 (2018 WL 1902416 *10): "But it is not necessary for the defendants to have been 'thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.' " (*quoting United States v.*

*Reese*, 2 F.3d 870, 885 (9th Cir. 1993)) (emphasis in original.).

Lastly, Plaintiff need not identify the particular Beverly Hills employee responsible for the violation of his rights. *Perez v. City of Huntington Park*, 7 Cal. App. 4th 817, 820-21 (1992) ("The plaintiff may be unable to identify which employee committed the wrongful act, but this is not fatal to the employer's liability, if the evidence establishes that some employee in the scope of employment committed the wrongful act."). Thus, the City may still be found liable pursuant to *respondeat superior* for the §52.1 civil rights violation. Cal. Gov't Code § 815.2(a); *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (*en banc*) ("California, however, has rejected the *Monell* rule and imposes liability on [governmental entities] under the doctrine of respondeat superior for acts of [entity] employees.").[3]

## IV. The SAC Properly Alleges False Imprisonment.

Defendant claims the allegations at paragraph 24 of the SAC are "unsupported," but ignore that paragraphs 12-20 are the factual allegations, all of which support the legal causes of action stated in the SAC for they allege an arrest and imprisonment *without* probable cause that Plaintiff had committed any crime. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (Ninth Circuit holds that "officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness's knowledge or interview other witnesses.); *see also Hopkins v. Bonvicino*, 573 F.3d 752, 774-75 (9th Cir. 2009) (Explaining and following *Arpin*). Defendant's claim the SAC does not "give fair notice and to enable the opposing party to defend itself effectively" (Motion 11:10-

---

[3] Defendant is also incorrect when it states a violation of Cal. Penal Code § 853.6 is not actionable under § 52.1. (Motion 13:14-16). Section 52.1 allows for redress when there is a violation of any "rights secured by the Constitution *or laws* of this state . . ."

00125385.WPD

11) is just a boilerplate argument without any acknowledgment of the specific allegations. The SAC is sufficiently clear as to what Plaintiff alleges Beverly Hills employees did to him, and why they did what they did.

The SAC further alleges BHPD officials intentionally prolonged his booking so as to delay Plaintiff's release under Cal. Penal Code § 853.6.[4] SAC ¶19. As the SAC alleges, Plaintiff was not released until eight o'clock the following morning. It does not take 10 hours to book someone. this unnecessary delay deprived Plaintiff of what would have been a prompt release under § 853.6.

Defendant Beverly Hills is liable for the false imprisonment based upon *respondeat superior* under Cal. Gov't Code § 815.2(a). *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 717-19 (1973) (Under § 815.2(a), county is liable for overdetaining the plaintiff in jail).

Finally, while it is correct that under state law Plaintiff cannot sue Beverly Hills for a false arrest if the arrest is pursuant to a citizen's arrest (*Hopkins v. Bonvicino*, 573 F.3d 752, 767, 774 (9th Cir. 2009)), Plaintiff is still entitled to sue the City under state law for failing to timely release him from custody. *Sullivan*, 12 Cal.3d at 715-19.

**V. The SAC Alleges Intentional Infliction of Emotional Distress.**

A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress

---

[4] Plaintiff contends that given the circumstances, even if there was probable cause (which plaintiff disputes obviously) he should have been simply ticketed and released at the scene, which was his home. It was unnecessary for him to be brought to the station and booked. But even if there was reason for his booking, defendants still failed to comply with § 853.6's mandate that he be promptly released.

by the defendant's outrageous conduct.

*Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009) (internal punctuation removed).

The SAC adequately alleges these elements. The false arrest, unnecessary delay in releasing plaintiff, and the Press Release specifically calling attention to what happened, were all for the purpose of embarrassing him in the press and retaliating against him for his proper exercise of his First Amendment rights. These acts amount to extreme and outrageous conduct. Moreover, Plaintiff did suffer severe emotional distress which was caused by the defendants' conduct. SAC ¶22 ("As a proximate result of the wrongful acts alleged above, Plaintiff did in fact suffer emotional and physical distress, and substantial reputational harm causing Plaintiff loss of employment opportunities and earnings.").

Again, the City is liable under *respondeat superior.* Cal. Gov't Code §815.2(a); *Robinson v. Solano County, supra*; *Perez v. City of Huntington Park, supra.*

**VI.  Conclusion.**

Plaintiff followed the instructions of the Court in its March 1, 2018 Order and has properly pleaded each and every cause of action. Defendant's motion should be denied.

DATED: May 4, 2018

> **GREGORY W. SMITH**
> **CHRISTOPHER BRIZZOLARA**
> **DONALD W. COOK**
> Attorneys for Plaintiff
>
> By _____
> Donald W. Cook

00125385.WPD